John C. Dalton, Jr., and Ruby P. Dalton v. Commissioner.
Dalton v. Commissioner
Docket No. 85502.
United States Tax Court
T.C. Memo 1962-84; 1962 Tax Ct. Memo LEXIS 224; 21 T.C.M. (CCH) 435; T.C.M. (RIA) 62084; April 16, 1962
*224 Business expenses incurred in selling real estate determined. Amount of deduction for amortization of a leasehold determined. Laurence Levitan, Esq., for the petitioners. William L. Kinzer, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined a deficiency in income tax for the calendar year *225 1958 in the amount of $10,300.65. On April 4, 1961, respondent notified this Court that on March 30, 1961, the respondent had made a jeopardy assessment pursuant to section 6861, I.R.C. 1954, against petitioners representing income tax for the calendar year 1958 in the amount of $4,428.15, plus interest in the amount of $520.15. In determining the deficiency of $10,300.65 the respondent disallowed deductions totaling $32,232.53, which disallowance was assigned as error. The parties have now settled by stipulation all of the items that were disallowed except two. These two consist of (1) an amount of $2,350.62 claimed by petitioner Ruby P. Dalton as real estate sales expense, and (2) an amount of $15,639 claimed by petitioner John C. Dalton, Jr., as amortization of a leasehold. Effect will be given to the items agreed upon in the recomputation to be made under Rule 50. Findings of Fact Some of the facts were stipulated and they are incorporated herein. Petitioners are husband and wife with residence in Chevy Chase, Maryland. They filed a joint Federal income tax return for the calendar year 1958 with the district director of internal revenue for the *226 Baltimore district. Real Estate Sales Expense During the year 1958 and for 13 years prior thereto petitioner Ruby P. Dalton, hereinafter sometimes referred to as Ruby, was employed by the Arlington Realty Company of Arlington, Virginia, as a fulltime real estate saleswoman. During 1958 the Arlington Realty Company employed about 18 to 20 other salesmen and saleswomen. During the taxable year Ruby made more real estate sales for her employer than any of the other employees of the company. She worked 7 days a week from 9:00 a.m. until late in the evening, sometimes until midnight. Ruby's commissions for 1958 amounted to $11,943.47 which she duly reported in the joint return. In making these sales it was necessary for Ruby to incur expenses, the largest item being the expense of operating several automobiles. During 1958 Ruby, at various times, owned a Dodge station wagon, a Buick, a Thunderbird, and a Chevrolet, all of which she used exclusively in her business and in driving to and from work, a distance of 7 1/2 miles one way. In all, she drove between 12,000 and 15,000 miles in 1958 and expended $1,532.43 in automobile operation. Petitioner John C. Dalton, Jr., hereinafter sometimes *227 referred to as petitioner, also had an automobile which he and Ruby used for pleasure. Ruby kept a record of her expenses. In addition to the automobile expense, Ruby expended $451.09 for entertaining prospective clients at luncheons or dinners, including a Christmas party; $26.20 for referral expenses which consisted of gifts to former customers who had referred business to her; $183.45 for gifts to clients to whom she had sold houses; and $157.45 for miscellaneous expenses, or a total for all expenses of $2,350.62. Ruby made a practice of making a gift to each new client who had purchased property from her. She found this practice usually resulted in the client's referring other prospective clients to her. Included in the miscellaneous account were expenses for real estate licenses, bonds and insurance policies in connection with the real estate licenses and Christmas gifts to the office employees. The Arlington Realty Company did not reimburse Ruby for any of these expenses. On the joint return for 1958 Ruby deducted $2,350.62 as real estate sales expense. The respondent disallowed the entire amount. Of the amount deducted, $1,500 is allowable as an ordinary and necessary *228 expense of selling real estate on a commission basis. Amortization of Leasehold During 1954 petitioner John C. Dalton, Jr., was president and principal stockholder and bondholder of Dalton Investments, Inc., a Delaware corporation doing business in the District of Columbia. On September 30, 1954, the stock and bond record of the corporation was as follows: Amount
Paid
Subscriptions
Shares
Subscribed
Cash
Other
Receivable
Common Stock A
(Authorized 15,000 shares $1.00 Par)
John C. Dalton, Jr.
2,000
$ 2,000
$ 2,000
Claude E. Burrell
1,100
1,100
$ 1,100
Five other persons
2,900
2,900
1,900
$ 1,000
6,000
$ 6,000
$ 3,900
$ 1,100
$ 1,000
Common Stock B
(Authorized 10,000 shares 10" Par)
John C. Dalton, Jr.
5,400
$ 540
$ 340
$ 200
Claude E. Burrell
1,700
170
70
100
Five other persons
2,900
290
190
100
10,000
$ 1,000
$ 600
$ 300
$ 100
Bonds
(Authorized $300,000)
John C. Dalton, Jr.
90,750
$ 72,600
$47,800
$24,800
Claude Burrell
35,000
28,000
25,200
$ 2,800
Five other persons
72,500
58,000
38,000
20,000
$198,250
$158,600
$85,800
$50,000
$22,800
The above *229 bonds of $198,250 par value had been sold at a discount of $39,650. Dalton Investments, Inc., owned all of the outstanding stock of Dalton Burrell, Inc., Dalton-Burrell, Inc., - Lot #21, and Thrifty Auto Sales, Inc., all Delaware corporations also doing business in the District of Columbia. About a month before petitioner purchased the $90,750 par value of bonds in Dalton Investments, Inc., he had paid $25,000 in cash for shares of stock in Thrifty Auto Sales. He transferred his stock in Thrifty Auto Sales to Dalton Investments, Inc., in part payment of the bonds to the extent of $24,800 and in part payment for 2,000 shares of common B stock, so that his basis of stock and bonds in Dalton Investments, Inc., on September 30, 1954, was as follows: Common A Stock
$ 2,000
Common B Stock
540
Bonds
72,600
Total
$75,140
On February 5, 1954, Dalton Investments, Inc., leased from Katharine B. Ridgway certain improved premises located at 1805 Connecticut Avenue, N.W., Washington, D.C., hereinafter sometimes referred to as the Connecticut Avenue lease or leasehold. The term of the lease was from February 5, 1954, to March 31, 1959. The annual rental was $6,600 payable *230 in advance in equal monthly installments of $550 per month. The lessee had the privilege to renew the lease, provided written notice to renew was given not later than 6 months prior to March 31, 1959, for a term of 5 years to March 31, 1964, at an annual rental of $7,500 payable in advance in equal monthly installments of $625 per month. Under paragraph 15 of the lease the lessee had the further privilege of purchasing the premises for $100,000 in cash, provided the original term of the lease was first extended to March 31, 1964. The lease of February 5, 1954, further provided that in addition to the rental the lessee shall pay all real estate taxes, premiums for fire insurance, premiums for liability insurance, water rent, and all special taxes for improvements made during the tenancy. The lease further provided that the lessee "takes the premises as is," subject to the monthly tenancies of the apartments on the second floor thereof, and the obligation to furnish heat and service thereto. The lessee also agreed to pay all bills for electricity, gas, water and public utilities as the same became due and payable and to place and keep the premises in good repair and condition. At *231 the time Dalton Investments, Inc., acquired the Connecticut Avenue lease, the ground floor of the building was vacant and in a run-down condition. Just prior thereto it had been occupied as a beauty salon. In order to use the building it was necessary for Dalton Investments, Inc., to rebuild the building almost completely which it did at a cost of $33,075.68. On July 14, 1955, petitioner and Burrell entered into a written contract whereby petitioner transferred to Burrell all of his stock and bonds in Dalton Investments, Inc., which had a cost basis to petitioner of $75,140 in exchange for an assignment of the Connecticut Avenue lease by Dalton Investments, Inc. Among other thing the contract provided: 4. Burrell agrees that the office furniture, supplies, and equipment located in the office of the corporation at Connecticut and Florida Avenues, Northwest, shall be and become the property of Dalton and he agrees to execute such documents on behalf of Dalton Investments, Inc. as may be necessary to effectuate such a transfer. 5. Burrell further agrees to assign to Dalton the lease belonging to Dalton Investments, Inc. for the property located at Connecticut and Florida Avenues, *232 Northwest, as of the next due date of said rent from Dalton Investments, Inc. to the landlord under that lease. 6. This agreement shall be contingent upon Burrell reaching an agreement satisfactory to him with any other holders of the capital stock, or evidence of indebtedness, of Dalton Investments, Inc., relative to the terms of repayment of such indebtedness. About the time petitioner and Burrell entered into the contract dated July 14, 1955, Dalton Investments, Inc., had just subleased the first floor, balcony, and offices of the Connecticut Avenue leased property to Lee D. Butler, Inc., to be used as a display and salesroom for automobiles. The term of this sublease was from July 15, 1955, to March 31, 1959. The annual rental was $8,400 payable in advance in equal monthly installments of $700 per month on the 15th day of the month. Only the first floor, balcony, and offices of the Connecticut Avenue property were subleased to Lee D. Butler, Inc. Petitioner retained the basement where he had his own private office, and the second floor, which consisted of two apartments which were rented to other tenants. Petitioner considered the basement worth $2,400 a year to him and he *233 had planned to remodel the two apartments on the second floor into eight smaller apartments at a considerably increased rental. Within about 2 years after the sublease to Lee D. Butler, Inc., had been entered into, the sublease to Butler was cancelled. Thereafter, on or about July 22, 1957, petitioner exercised the option to renew the original lease for a period ending March 31, 1964, and then entered into a sublease for the entire property with the Genghis Khan Restaurant through William D. Lee and Michael Yao for a term beginning August 1, 1957, and ending March 31, 1964, at an annual rental of $9,000, the sublessee agreeing to pay for all water, gas, electricity and other public utilities. The balance sheet of Dalton Investments, Inc., as of June 30, 1955, showed total assets of $87,135.46, total liabilities of $184,871.36, including $175,700 par value of bonds, total issued capital stock of $5,988, and a deficit of $103,723.90. The fair market value of the Connecticut Avenue lease on July 14, 1955, acquired by petitioner in exchange for stock and bonds in Dalton Investments, Inc., was $56,040. In a joint return for 1955 petitioner deducted $6,516.25 as amortization of *234 lease [1] with the explanation "Paid $56,040.00 for net lease with option to buy, prorated at $1,303.25 per month, $6,516.25." In joint returns for 1956, 1957, and 1958 petitioner deducted as amortization of lease $15,639 (12 times $1,303.25) for each of the years 1956, 1957, and 1958, respectively. For the taxable year 1958, which is the only year before us, the respondent disallowed all of the business deductions claimed by petitioner in the amount of $26,731.41 (which included the amortization deduction of $15,639) and in a statement attached to the deficiency notice he explained the disallowance as follows: (a) As you have failed to substantiate that the business expenses claimed on Schedule C of your return in the total amount of $26,731.41 were ordinary and necessary expenses paid during the taxable year, the deductions are disallowed. At the beginning of the taxable year 1958 petitioner's remaining basis of the lease acquired on July 14, 1955, was *235 $18,245.75 ($56,040 less amortization allowed for 1955, 1956, and 1957). At that time petitioner had exercised his option to renew the lease until March 31, 1964, so the lease had 75 months yet to run. For the year 1958 petitioner is entitled to a deduction for amortization of lease of $2,919.36 (12 X 1/75th of $18,245.75). Opinion Commuting expenses are not deductible from gross income. William L. Heuer, Jr., 32 T.C. 947, affirmed per curiam, 283 F. 2d 865 (C.A. 5, 1960); sections 1.162-2(e) and 1.262-1(b)(5), Income Tax Regs. They are considered as "personal, living, or family expenses" for which "no deduction shall be allowed" under section 262, I.R.C. 1954. [2] Counsel for petitioner in his reply brief concedes that a portion of Ruby's automobile expenses was commuting expenses and not deductible. Of the $2,350.62 claimed by Ruby as ordinary and necessary expenses under section 162(a), I.R.C. 1954, [3] in selling real estate, there was included $1,532.43 as the cost of operating her automobiles used exclusively in her business and in commuting to and from her work, a distance of 7 1/2 miles one way, 7 days *236 a week. Regarding the balance of the expenses claimed in the total amount of $818.19, we think Ruby is entitled to some deduction for these items as ordinary and necessary expenses of selling real estate. Respondent was willing to concede that of the total claimed of $2,350.62 (which includes the automobile expense) Ruby should be allowed a total amount of $587.66, under Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). We think she is entitled to a total (including the automobile expense) of $1,500 and we so hold. Cohan v. Commissioner, supra.Cf. James Schulz, 16 T.C. 401. Regarding the claimed deduction for amortization, the respondent contends that the fair market value of the Connecticut Avenue lease when acquired by petitioner *237 in 1955 was $14,500, or in any event not more than $19,000, instead of the $56,040 used by petitioner. The respondent further contends that whether the value be $14,500 or $19,000, petitioner has recovered more than these amounts in the joint returns for 1955 and 1956, namely, $22,155.25, and is, therefore, not entitled to any allowance for the taxable year 1958. Petitioner contends he is entitled to the full amount of $15,639 as claimed on the joint return. Respondent further contends that if the Court should find petitioner had any unrecovered basis in the leasehold at the beginning of the taxable year here involved, that unrecovered basis should be recovered over the period from January 1, 1958, to March 31, 1964, a period of 75 months, on the ground that the option to renew the lease had been exercised prior to 1958. Both before and after petitioner acquired the Connecticut Avenue leasehold in exchange for stock and bonds in Dalton Investments, Inc., he had conferences with the Internal Revenue Service as to what would constitute petitioner's basis for amortization deductions of the leasehold. After several conferences it was agreed that petitioner's basis for amortization *238 of the leasehold was $56,040 and petitioner used this basis for claiming deductions in the joint returns for 1955, 1956, 1957, and 1958. Undoubtedly the respondent is within his rights to determine a smaller basis for amortization in 1958 if in fact an error was committed in the earlier years in finding too high a basis. In contending that the fair market value of the Connecticut Avenue leasehold when acquired in 1955 was $14,500, he offered the testimony of an engineer in the Internal Revenue Service who testified to that effect. In arriving at the value of $14,500, the engineer considered only the excess rental petitioner would receive up to March 31, 1959, over the rental petitioner would have to pay the original lessor, discounted down to present worth on July 14, 1955, and in arriving at the $19,000 figure the engineer took into consideration the same factors up to March 31, 1964. The respondent's witness gave no consideration to the increased rental petitioner hoped to obtain by converting the two apartments on the second floor into eight smaller apartments, to the value of the space in the basement occupied by petitioner as his private office, or to the increase in the value *239 of the rented property due to the contemplated development of the property across the street known as the Temple Heights property on a portion of which now stands the new Universal Building. When petitioner acquired the Connecticut Avenue leasehold in 1955 he thought the development of the Temple Heights property would have a "tremendous impact" on the rental potential of the property covered by the Connecticut Avenue lease. The fair market value of the Connecticut Avenue leasehold on July 14, 1955, is a question of fact to be determined from all the evidence. We have carefully considered all the evidence and are of the opinion that the value arrived at in 1955 of $56,040 when the lease was acquired represented the fair market value of the leasehold at that time and we have so found as an ultimate fact. It follows that petitioner's basis for amortization of the leasehold on July 14, 1955, was $56,040. For the years 1955, 1956, and 1957 petitioner claimed and was allowed deductions for amortization of leasehold of $6,516.25, $15,639 and $15,639 on the basis that the lease had 43 months to run from the time it was acquired. This leaves a remaining basis of $18,245.75. Prior to the *240 beginning of the taxable year, petitioner had exercised his option to renew the lease for a period of 5 years from March 31, 1959. Therefore, at the beginning of the taxable year 1958 the lease as renewed had a period of 75 months yet to run. We hold that the remaining basis of $18,245.75 should be spread over this 75 months' period so that the deduction for amortization of leasehold for 1958 would be 12 times 1/75th of $18,245.75, or $2,919.36. Jos. N. Neel Co., 22 T.C. 1083; Hens & Kelly, Inc., 19 T.C. 305; Rev. Rul. 55-540, 1955-2 C.B. 39, 43, sec. 6.01. Decision will be entered under Rule 50. Footnotes
1. This was on the assumption that the fair market value of the lease when acquired was $56,040; that the lease had 43 months yet to run; that 1/43d of $56,040 was $1,303.25: and that 5 months in 1955 was 5 times $1,303.25, or $6,516.25.↩
2. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. ↩
3. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.↩